**Electronically Filed**
**Intermediate Court of Appeals**
**30447**
**12-MAR-2012**
**08:26 AM**

NO. 30447

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
GRANT Y. CUMMINS, Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTA-09-05664)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Grant Y. Cummins (Cummins) appeals
from the "Notice of Entry of Judgment and/or Order and
Plea/Judgment" (Judgment), filed on April 15, 2010 in the
District Court of the First Circuit (district court).[1]  Cummins
was charged with Operating a Vehicle Under the Influence of an
Intoxicant (OVUII), in violation of Hawaii Revised Statutes
(HRS) § 291E-61(a)(1) and (a)(3) (Supp. 2009).[2]  As set forth in

---

[1]  The Honorable William A. Cardwell presided.

[2]  HRS § 291E-61(a)(1) and (3) provide:

> §291E-61 **Operating a vehicle under the influence of an**
> **intoxicant.**  (a) A person commits the offense of operating a
> vehicle under the influence of an intoxicant if the person
> operates or assumes actual physical control of a vehicle:
> (continued...)

the Judgment, the district court convicted Cummins of violating HRS § 291E-61(a)(3). Cummins was acquitted of the charge under HRS § 291E-61(a)(1). The district court sentenced Cummins to pay a $250 fine and various fees and undergo an alcohol assessment and substance abuse treatment.

On appeal, Cummins argues that: (1) the district court erred in convicting him of OVUII based on his Intoxilyzer test results, because before he took the Intoxilyzer test, he was told by a police officer that he would have to pay $300 to take a blood test; and (2) the district court violated Cummins's right to confrontation under the Sixth Amendment to the United States Constitution by admitting into evidence two Supervisor's Sworn Statements regarding accuracy tests conducted on the Intoxilyzer instrument, where the supervisors did not testify at trial.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Cummins's points of error as follows:

(1) Upon being arrested for OVUII and taken to the police station, Cummins was advised about the implied consent law, including that he could "refuse to submit to a breath or blood test, or both for the purpose of determining alcohol concentration." He was further advised that if he refused testing, he would be "subject to the procedures and sanctions

---

[2](...continued)

> (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty; [or]
>
> . . .
>
> (3) With .08 or more grams of alcohol per two hundred ten liters of breath[.]

There are two versions of HRS § 291E-61 contained in the HRS 2009 Cumulative Supplement. The version applicable to this case is the one effective until December 31, 2010.

under chapter 291E, part III, or 291E-65 as applicable." In explaining the options, a police officer additionally advised Cummins that if he chose to submit to a blood test he would have to pay $300 for the test, whereas the breath test was free.

Relying on State v. Wilson, 92 Hawai'i 45, 987 P.2d 268 (1999), Cummins contends that "[n]o part of the implied consent law permits the police to misinform a driver about a blood test in order to induce the driver to take an Intoxilyzer test" and thus the district court erred in admitting into evidence the results of the Intoxilyzer test.

The information provided by the police officer, that Cummins would have to pay $300 out-of-pocket for the blood test, was not accurate. Such payment could be ordered only after a person was sentenced under HRS § 291E-61, or a person was convicted or had his or her license or privilege suspended or revoked pursuant to chapter 291E. HRS § 291E-61(f) (2009 Supp.) and § 291E-11(g) (2007 Repl.).[3] Moreover, under the applicable statutes, ordering payment for a blood test is discretionary and not mandatory. HRS § 291E-61(f) and § 291E-11(g).

Although we do not condone the incorrect information provided to Cummins in this case, the circumstances here are distinguishable from the circumstances in Wilson and do not warrant exclusion of the Intoxilyzer test results. Both the applicable law and the impact of the incorrect information provided in this case are materially different than in Wilson.

---

[3] HRS § 291E-61(f) provides, "[a]ny person sentenced under this section may be ordered to reimburse the county for the cost of any blood or urine tests conducted pursuant to section 291E-11." Moreover, § 291E-11(g) provides, "[a]ny person tested pursuant to this section who is convicted or has the person's license or privilege suspended or revoked pursuant to this chapter may be ordered to reimburse the county for the cost of any blood or urine tests, or both, conducted pursuant to this section."

In Wilson, information provided to the defendant advised him of the consequences for refusing to take any tests, compared to the consequences for taking a test and failing it. After being advised that he could take either a blood test or breath test or both, the defendant was further advised:

> That if you refuse to take any tests the consequences are as follows: (1) if your driving record shows no prior alcohol enforcement contacts during the five years preceeding [sic] the date of arrest, your driving privileges will be revoked for one year *instead of the three month revocation that would apply if you chose to take the test and failed it*[.]

92 Hawai'i at 47, 987 P.2d at 270. In this context, the defendant was misinformed that, if he elected to take a test and failed it, a three-month license revocation would apply; rather, under the prevailing case law, the defendant's license could actually be revoked for up to one year. Id. at 51, 987 P.2d at 274. The defendant elected to take a blood test and at trial, moved to suppress the blood test results. The trial court granted the defendant's suppression motion and the State subsequently appealed. Id. at 46-48, 987 P.2d at 269-71.

The Hawai'i Supreme Court held that the arresting officer had violated the consent requirements under the then-existing statutory scheme in HRS Chapter 286 by misinforming the defendant about the sanctions he faced for taking and failing the blood test. Id. at 51, 53-54, 987 P.2d at 274, 276-77.

> Under this "implied consent" scheme, when a person is arrested for violation of HRS § 291-4, the arresting officer must, *inter alia*, "take possession of any license held by the person and request the arrestee to take a test for concentration of alcohol in the blood." HRS § 286-255(a) (Supp.1998). **Upon informing the arrestee of his or her choice of taking a breath test, blood test, or both, "[t]he arresting officer *shall* also inform the person of the sanctions under this part, including the sanction for refusing to take a breath or a blood test."** *See id.* (emphasis added). HRS § 286-151 likewise requires that "the test or tests shall be administered ... *only after* ... [t]he person has been informed by a police officer of the sanctions under part XIV and sections 286-151.5 and 286-157.3." (Emphasis added.) Thus, as the statutory language makes clear, a driver's "implied consent" to an

> evidentiary chemical alcohol test is qualified by his or her implied right to refuse such a test after being accurately informed of his or her statutory right to consent or refuse, as well as the consequences of such consent or refusal.

Id. at 48-49, 987 P.2d at 271-72 (bold emphasis added) (footnote omitted). The supreme court held that "although Wilson elected to take the test, he did not make a knowing and intelligent decision whether to exercise his statutory right of consent or refusal." Id. at 51, 987 P.2d at 274; see also State v. Garcia 96 Hawai'i 200, 204, 29 P.3d 919, 923 (2001) (discussing the decision in Wilson).

Importantly, suppression of the defendant's blood test results was deemed proper in Wilson due to the arresting officer's *violation* of HRS Chapter 286, which at that time set out the implied consent law. 92 Hawai'i at 52 n.10, 987 P.2d at 275 n.10 (stating that "[t]his court has previously indicated that the exclusion of evidence based on a statutory violation is proper under appropriate circumstances" and citing to State v. Pattioay, 78 Hawai'i 455, 467, 896 P.2d 911, 923 (1995)); see also Garcia, 96 Hawai'i at 204, 29 P.3d at 923 (noting that in Wilson, the court had "affirmed suppression of the test results . . . under this court's supervisory powers as espoused in Pattioay.").

In this case, under the statutory provisions applicable to Cummins, the consent requirements are different than in Wilson. HRS § 291E-11 requires, *inter alia*, that a person arrested upon probable cause be informed that he or she may refuse to submit to testing.[4] It is undisputed that Cummins was

---

[4] HRS § 291E-11 states in relevant part:

> **§291E-11 Implied consent of operator of vehicle to submit to testing to determine alcohol concentration and drug content.** (a) Any person who operates a vehicle upon a public way, street, road, or highway or on or in the waters of the State shall be deemed to have given consent, subject
>
> (continued...)

informed that he could refuse to submit to testing. Moreover, under § 291E-15 (2007 Repl.), a law enforcement officer was required to inform Cummins of applicable sanctions for refusing to submit to a breath or blood test[5] only after it was initially determined that Cummins had refused to submit to any testing.[6]

---

[4](...continued)

> to this part, to a test or tests approved by the director of health of the person's breath, blood, or urine for the purpose of determining alcohol concentration or drug content of the person's breath, blood, or urine, as applicable.
> (b) The test or tests shall be administered at the request of a law enforcement officer having probable cause to believe the person operating a vehicle upon a public way, street, road, or highway or on or in the waters of the State is under the influence of an intoxicant or is under the age of twenty-one and has consumed a measurable amount of alcohol, only after:
> (1) A lawful arrest; and
> (2) The person has been informed by a law enforcement officer that the person may refuse to submit to testing under this chapter.
> (c) If there is probable cause to believe that a person is in violation of . . . section 291E-61 . . . as a result of having consumed alcohol, then the person shall elect to take a breath or blood test, or both, for the purpose of determining the alcohol concentration.

(Emphasis added).

[5] If there is probable cause to believe a person violated HRS § 291E-61 as a result of having consumed *alcohol*, the person elects between taking a breath or blood test or both to determine alcohol concentration. HRS § 291E-11(c). If there is probable cause to believe a person violated HRS § 291E-61 as a result of having consumed any *drug*, the person elects between taking a blood or urine test or both to determine drug content. HRS § 291E-11(d).

[6] HRS § 291E-15 states:

> §291E-15 Refusal to submit to breath, blood, or urine test; subject to administrative revocation proceedings. If a person under arrest refuses to submit to a breath, blood, or urine test, none shall be given, except as provided in section 291E-21. Upon the law enforcement officer's determination that the person under arrest has refused to submit to a breath, blood, or urine test, if applicable, then a law enforcement officer shall:
> (1) Inform the person under arrest of the sanctions under section 291E-41 or 291E-65; and
> (2) Ask the person if the person still refuses to submit to a breath, blood, or urine test, thereby subjecting the person to the procedures and sanctions under part
> (continued...)

HRS § 291E-15; see also § 291E-41(d) (2007 Repl.). Here, Cummins did not refuse to submit to testing, instead consenting to take the breath test. Given the applicable statutory scheme in this case, unlike in Wilson, there was no violation of the statutorily mandated informed consent.

Additionally, the incorrect information challenged in this case -- that Cummins would have to pay $300 out-of-pocket for a blood test -- was not relevant to his decision whether to consent to testing or not. Rather, it was relevant only as to which test he would elect to take. This is substantively and materially distinct from the circumstances and ruling in Wilson, where the misinformation was relevant to the defendant's decision whether to consent or refuse to testing, and thus "prejudice inhered" because it affected his potential penalties. See 92 Hawai'i at 52 n.9, 987 P.2d at 275 n.9; Garcia, 96 Hawai'i at 207, 29 P.3d at 926 (stating that in Wilson, "prejudice inhered in the failure of the police to properly render a complete explanation of the penalties to the driver in the first place"); see also Castro v. Admin. Dir. of the Courts, 97 Hawai'i 463, 40 P.3d 865 (2002) (because the meaning of "prior alcohol enforcement contact" was not explained and the import of information provided to defendant was that three or more prior contacts would result in license revocation for life regardless of whether he submitted to testing, his refusal to take any tests was not knowing or intelligently made).

---

[6](...continued)
        III or section 291E-65, as applicable;
provided that if the law enforcement officer fails to comply with paragraphs (1) and (2), the person shall not be subject to the refusal sanctions under part III or section 291E-65.

Therefore, the district court was correct in concluding that <u>Wilson</u> did not require exclusion of the Intoxilyzer breath test results in this case and thus properly admitted the test results into evidence.

(2) The State's Exhibit 4 was an "Intoxilyzer 8000 Accuracy Test Supervisor's Sworn Statement" (Intoxilyzer Accuracy Statement) dated November 13, 2009, sworn to by Intoxilyzer supervisor Tracy J. Morita. The State's Exhibit 5 was an Intoxilyzer Accuracy Statement dated December 2, 2009 and sworn to by Intoxilyzer supervisor Richard Staszyn. Cummins's right to confrontation under the Sixth Amendment of the United States Constitution was not violated when the district court denied his motion to suppress the State's Exhibit 4 and Exhibit 5. <u>State v. Marshall</u>, 114 Hawai'i 396, 399-402, 163 P.3d 199, 202-05 (App. 2007) (holding that an Intoxilyzer supervisor's sworn statements, that the Intoxilyzer used to test the defendant had been properly calibrated and tested for accuracy, were not "testimonial" hearsay and, therefore, not subject to the requirements of the confrontation clause of the Sixth Amendment); <u>see also</u> <u>State v. Fitzwater</u>, 122 Hawai'i 354, 374, 227 P.3d 520, 540 (2010) (holding that a speed check card "created in a non-adversarial setting in the regular course of maintaining [a] police vehicle, five months prior to the alleged speeding incident" was nontestimonial, and its admission did not violate the Sixth Amendment to the United States Constitution).[7]

---

[7] Cummins has not challenged the admission of Exhibits 4 and 5 under the confrontation clause in the Hawai'i Constitution and thus we do not reach that issue. <u>See</u> <u>Fitzwater</u>, 122 Hawai'i at 371 n.10, 227 P.3d at 537 n.10.

Therefore,

IT IS HEREBY ORDERED that the "Notice of Entry of Judgment and/or Order and Plea/Judgment," filed on April 15, 2010 in the District Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawai'i, March 12, 2012.

On the briefs:

Earle A. Partington
(The Law Office of Earle A. Partington)
for Defendant-Appellant

Loren J. Thomas
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge

9